**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:24-cv-23923**

**21 AIR PILOTS ASSOCIATION, INC.,**

**Plaintiff,**

**v.**

**AVIA INVESTMENTS, LLC; 21 AIR, LLC;**
**MICHAEL MENDEZ; OLGA GUERRA;**
**KYLE SMITH; & DONNA ENGELBRECHT;**

**Defendants.**
**_______________________________________/**

**DEFENDANTS 21 AIR, LLC; MICHAEL MENDEZ, AND OLGA GUERRA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

## I. INTRODUCTION

The Court has federal question jurisdiction, and Plaintiff's Motion to Remand should be denied.[1] Plaintiff's claims and requested relief logically hinge on the results of the December 2022 union election. Plaintiff's claims require a resolution of whether the December 2022 union election was proper, which led to Defendants "transferring [collected dues money] to an [alleged] imposter organization."[2] The Labor-Management Reporting and Disclosure Act ("LMRDA") completely pre-empts all avenues for challenging the results of a union election. The LMRDA gives the Secretary of Labor the "exclusive" authority to challenge a union election "already conducted." Because federal law creates an exclusive cause of action and Plaintiff's claims fall within of that cause of action, Plaintiff's state law claims are completely pre-empted. In other

---

[1] Since filing its initial Motion to Remand, Plaintiff has filed two more seemingly identical Motions to Remand. ECFs 14, & 15. For sake of clarity, this Response is addressed to Plaintiff's various Motions for Remand.

[2] In reality, the "imposter organization" are the winners (Defendants Kyle Smith and Donna Engelbrecht) of the December 2022 election, which also ousted Karl Seuring, Charles Bless, and James Scheidler as officers of the 21 Air Pilots Association ("TAPA").

words, Plaintiff's claims necessarily arise under federal law, and the Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## II. FACTUAL BACKGROUND

21 Air, LLC is an air carrier subject to the Railway Labor Act. Decl. of Michael Mendez, at ¶ 3. Its pilots are represented by the 21 Air Pilots Association (not "21 Air Pilots Association, Inc." nor "TAPA, Inc."), which was the labor organization certified by the National Mediation Board on January 11, 2021. Exh. 6 to Plaintiff's Complaint; Decl. of Michael Mendez, at ¶¶ 7, & 8. 21 Air and the 21 Air Pilots Association reached its first contract on March 2, 2021, which becomes amendable on March 2, 2028. Decl. of Michael Mendez, at ¶¶ 7–9; *see also* Exh. 1 to Decl. of Michael Mendez.

In November 2022, the pilots of 21 Air wanted change. Exh. 2 to Plaintiff's Complaint; Decl. of Michael Mendez, at ¶ 10; Exh. 2 to Decl. of Michael Mendez. In December 2022, a vote was held and nearly all pilots voted to remove Seuring, Bless, and Scheidler as officers of TAPA. Decl. of Michael Mendez, at ¶¶ 10–12; Exhs. 2, & 3 to Decl. of Michael Mendez. Soon after new officers were elected and rescinded the previous TAPA officers' "resolutions." Exh. 8 to Plaintiff's Complaint; Decl. of Michael Mendez, at ¶¶ 12, & 13; Exhs 2, & 3 to Decl. of Michael Mendez. 21 Air (and its executive officers) believed in good faith that the newly elected TAPA leadership were the officers for the pilots' labor organization, TAPA, and treated with them under Section 2, Ninth, of the Railway Labor Act. Decl. of Michael Mendez, at ¶ 13.

The former officers of TAPA now claim that 21 Air, Mendez, and Guerra have tortiously interfered with TAPA's contract with 21 Air, and that the Defendants have "conspired to steal" $9,000 in collected dues money allegedly belonging to "21 Air Pilots Association, Inc." Plaintiff's Complaint, at ¶ 17. In reality, 21 Air was requested, by the officers of TAPA, to hold the collected

dues money in an escrow account. Decl. of Michael Mendez, at ¶¶ 14, & 15; Exh. 4 to Decl. of Michael Mendez. 21 Air complied with the current leadership of TAPA's request and held the dues money in escrow. Decl. of Michael Mendez, at ¶ 15. Then, upon request from the current leadership of TAPA, 21 Air released the money held in escrow to an account designated by the current officers of TAPA. Decl. of Michael Mendez, at ¶¶ 15, & 16.

Since the December 2022 recall election, the former officers of TAPA have attempted to challenge the election. Decl. of Michael Mendez at ¶ 17. As alleged, 21 Air Pilots Association, Inc. filed a complaint with the Department of Labor's Office of Labor-Management Standards, and sent a letter to the current TAPA leadership. Plaintiff's Complaint, at ¶ 30. In the March 3, 2023 letter, the former "officers" accused Smith and Engelbrecht of violating the constitution and bylaws of TAPA, and the Labor-Management Reporting and Disclosure Act. Decl. of Michael Mendez, at ¶ 17; Exh. 5 to Decl. of Michael Mendez. The letter further asserted that members in bad standing were allowed to be elected as officers of TAPA. *Id.* As alleged, the Department of Labor has taken no action regarding 21 Air Pilots Association, Inc.'s complaint. Plaintiff's Complaint at ¶ 30.

## III. LAW AND ARGUMENT

### a. Complete Pre-Emption gives rise to federal question jurisdiction.

"Complete preemption occurs when 'the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Smith v. GTE Corp.*, 236 F.3d 1292, 1311 (11th Cir. 2001) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). The Eleventh Circuit has identified several factors to consider when determining if a federal statute complete pre-empts state law claims, including:

> whether the state claim is displaced by federal law under an ordinary preemption analysis, whether the federal statute provides a cause of action, what kind of jurisdictional language exists in the federal statute, and what kind of language is present in the legislative history to evince Congress's intentions.

*Id.* (quoting *BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 855 (11th Cir. 1999)).

However, the "'touchstone' of federal jurisdiction under the complete preemption doctrine is 'Congress's intent.'" *Id.* Generally, there are two prerequisites for finding complete pre-emption: (1) Congress must have created "an exclusive cause of action," and (2) the plaintiff's claim must "come[] within the scope of that cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8–9 (2003); *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 24 (1983); *Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, No. 21-10410, 2023 U.S. App. LEXIS 11836, at *2 (11th Cir. May 15, 2023) ("A state-law claim is completely preempted (and thus removable) if (1) a federal statute creates an exclusive cause of action and (2) the state-law claim falls within that exclusive federal cause of action."); *see also Dunlap v. GL Holding Group, Inc.*, 381 F.3d 1285, 1290–91 (11th Cir. 2004) (federal jurisdiction may arise if the plaintiff's "state-law claims raise substantial questions of federal law"). Here, both prerequisites are met.

**b. The Labor-Management Reporting and Disclosure Act completely pre-empts Plaintiff's state law claims**

*i. The LMRDA creates an "exclusive" cause of action for the Secretary of Labor to challenge a union election "already conducted."*

The Labor-Management Reporting and Disclosure Act "was Congress' first major attempt to regulate the internal affairs of labor unions." *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 528 (1984). "Title I of the [LMRDA] provides a statutory 'Bill of Rights' for union members, including various protections for members involved in union elections, with enforcement and appropriate remedies in district court." *Id.* "Title IV, in contrast, provides an

elaborate postelection procedure aimed solely at protecting union democracy through free and democratic elections, with primary responsibility for enforcement lodged with the Secretary of Labor." *Id.*; *see* 29 U.S.C. §§ 481–483.

"Throughout its consideration of the LMRDA, Congress *clearly intended* to lodge *exclusive responsibility* for post-election suits challenging the validity of a union election with the Secretary of Labor [. . .]. As the Report of the Senate Committee on Labor and Public Welfare explained: 'since the bill provides an effective and expeditious remedy for overthrowing an improperly held election and holding a new election, *the Federal remedy is made the sole remedy and private litigation would be precluded*.'" *Crowley*, 467 U.S. at 544 (emphasis added); 29 U.S.C. § 482(a)–(d) (outlining procedure for disputing union election); 29 U.S.C. § 483 ("*The remedy provided by this subchapter for challenging an election already conducted shall be exclusive*."). The LMRDA creates an exclusive federal cause of action to challenge union elections "already conducted," and allows only the Secretary of Labor to bring such an action. *Id.*; *Mims v. Teamsters Local No.*, 728, 821 F.2d 1568, 1570 (11th Cir. 1987) ("Title IV of the LMRDA gives the Secretary of Labor exclusive authority to bring post-election challenge suits.").

A challenge to a union election starts with the union member exhausting the remedies available under the constitution or bylaws of the labor organization. 29 U.S.C. § 482(a)(1). If the member is dissatisfied with the union's resolution of his complaint (or the union fails to respond within three months), the union member may file a complaint with the Secretary of Labor. 29 U.S.C. § 481(a)(2). The Secretary of Labor has the authority to investigate the complaint, and if she finds probable cause she may bring a civil action against the union in a federal district court. 29 U.S.C. § 482(b).

In an action under § 482(b), the Secretary of Labor may request "to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary." *Id.* The Court has the authority to "preserve the assets of the labor organization." *Id.* If, after a trial, the Court finds a violation of the LMRDA, it has extensive powers to order a new election, remove officers of the labor organization, and declare officers of the labor organization. 29 U.S.C. § 482(c)(1)–(2). However, absent an action by the Secretary of Labor, the union election is "presumed valid." 29 U.S.C. § 482(a)(2). Congress was explicit that "[t]he remedy provided by this subchapter for challenging an election already conducted shall be exclusive." 29 U.S.C. § 483; *see Crowley*, 467 U.S. at 542 n.18 & at 544.

The first prerequisite for complete pre-emption is met: there is an exclusive federal cause of action. *Beneficial Nat'l Bank*, 539 U.S. at, 8–9; 29 U.S.C. §§ 482–483. Much like certain causes of action under the Labor-Management Relations Act and ERISA (where courts have found complete pre-emption), the LMRDA "set[s] forth detailed procedures and remedies governing" the Secretary of Labor's exclusive cause of action to challenge union elections already conducted. *Beneficial Nat'l Bank*, 539 U.S. at 8; 29 U.S.C. § 482(a)–(d).

The fact that Plaintiff does not have standing to challenge a union election "already conducted" should not alter this analysis. For example, in *Avco Corp. v. Aero Lodge No. 735, IAM*, 390 U.S. 557, 560–562 (1968), the Supreme Court held that an employer's state lawsuit seeking an injunction against union strikers fell within the scope of 29 U.S.C. § 185, and thus was completely pre-empted. The Supreme Court held this even though the employer could not obtain the same remedy under 29 U.S.C. § 185. *Id.*; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 n.4 (1987). As the Supreme Court elaborated in *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983), even though the plaintiff in *Avco* "sought a remedy available only

under state," any suit "for violations of contracts between an employer and a labor organization" is "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence." The Supreme Court in *Avco* noted that "[t]he nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy." 390 U.S. at 561. Here, Plaintiff has a remedy under the LMRDA: it may file a complaint with the Secretary of Labor. 29 U.S.C. § 482(a)(1)–(2). Plaintiff's inability file a lawsuit challenging an election "already conducted" was a conscious choice made by Congress in passing Title IV of the LMRDA. *Crowley*, 467 U.S. at 544.

*ii. Plaintiff's claims and requested relief fall within the scope of the Secretary's "exclusive" cause of action.*

21 Air Pilots Association, Inc.'s claims here fall within the scope of the Secretary of Labor's exclusive cause of action to challenge a union election "already conducted," thus, the second prerequisite of complete pre-emption is met. *Beneficial Nat. Bank*, 539 U.S. at 6 (citing *Franchise Tax Bd.*, 463 U.S. at 23–24). Here, Plaintiff's Complaint seeks to challenge the results of a union election conducted in December 2022. Exh. 2 to Plaintiff's Complaint; Decl. of Michael Mendez, at ¶¶ 10–13, & 17; Exhs. 2, 3, & 5 to Decl. of Michael Mendez.

Indeed, Plaintiff's Motion to Remand makes its intention crystal clear. For example, Plaintiff asserts that Defendants "began to unlawfully interfere [. . .] by stealing and transferring [collected dues money] to an imposter organization known as 'TAPA, Inc.'" ECF 12, at 1. Next, Plaintiff alleges "two of [21 Air, LLC's] current pilots [Defendants Smith and Engelbrecht] have continued to interfere with TAPA, even going so far as to *impersonate* its real members as union Officers." *Id.* at 2 (emphasis in original). As discussed above, while Plaintiff goes to great lengths to re-characterize its Complaint, the claims all go back to the December 2022 union election, which removed Seuring, Bless, and Scheidler as officers of TAPA.

Under the plain terms of § 483, the December 2022 recall election is "already conducted." *See McDonough v. Int'l Union of Operating Engineers*, 470 F.2d 261, 264 (3d Cir. 1972) ("an election has been conducted once balloting has occurred."); *see further Brown v. American Arbitration Ass'n*, 717 F. Supp. 195, 201 (S.D.N.Y. 1989) ("An election is 'already conducted' within the meaning of § 483 once balloting has occurred, even though the ballots have not been counted."). Plaintiff's claims fall within the scope of the Secretary of Labor's "exclusive" cause of action under § 482 to challenge the results of an election "already conducted."

Plaintiff's civil theft claim requires it to prove, by "'clear and convincing evidence,' an injury caused by the defendant's violation of one or more of the provisions of the criminal theft laws." *World Cellphones Distribs. Corp. v. De Surinaamsche Bank, N.V.*, 357 So. 3d 225, 230 (Fla. 3rd Dist. Ct. App. 2023). While Plaintiff's Complaint is not specific about which criminal theft law it believes Defendants violated, the claim nonetheless requires Plaintiff to prove that Defendants "knowingly obtain[ed] [. . .], the property of another with intent to either temporarily or permanently: (a) [d]eprive the other person of a right to the property or a benefit from the property" or "(b) [a]ppropriate the property to his or her own use or the use of any person not entitled to the use of the property." *Id.* (quoting Fla. Stat. § 812.014(1)). Plaintiff's tortious interference claim requires it to prove "a contract exits; the third-party had knowledge of the contract; the third party intentionally interferes with a party's right under the contract; there is no justification or privilege for the interference; and there are damages." *Mariscotti v. Merco Group at Akoya, Inc.*, 917 So. 2d 890, 892 (Fla. 3rd Dist. Ct. App. 2005) (citing *Amer. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 8 (Fla. 4th Dist. Ct. App. 1984)).

Plaintiff's claims fall within the scope of the Secretary of Labor's exclusive cause of action under §§ 482(b), and 483 as the "entire complaint is premised on [its] challenge to the results of a

union election." *Porch-Clark v. Engelhart*, 930 F. Supp. 2d 928, 934 (N.D. Ill. 2013) (holding that "[b]ecause Title IV of the LMRDA provides the exclusive vehicle for such challenges, any challenge based on state law is precluded by the complete preemption doctrine."). For instance, Plaintiff alleges that several of the Defendants "began impersonating and acting as TAPA's officers in contacting the Pilots at 21 Air, LLC in a collective-bargaining capacity" and that "Mr. Mendez, Ms. Guerra, Capt. Smith, and Ms. Engelbrecht then conspired to steal approximately [$9,000] in collected dues monies rightfully belonging to TAPA and diverted that money to another, yet unknown account and/or blocked dues or fees controlled by Capt. Smith and Ms. Engelbrecht, corporate officers of a fraudulent bargaining unit, TAPA, Inc." Plaintiff's Complaint at ¶¶ 16, & 17; *see also* ECF 12, at 1–2. Plaintiff conveniently omit any reference to the three officers of 21 Air Pilots Association, Inc. being voted out as officers of TAPA by an overwhelming majority of pilots. Decl. of Michael Mendez at ¶¶ 10–13; Exhs. 2, & 3 to Decl. of Michael Mendez. Plaintiff, instead, seeks to pull the wool over the Court's eyes by asserting that Smith and Engelbrecht formed an "imposter organization" and are "impersonating" TAPA officers. ECF 12, at 1–2.

Here, Plaintiff's state law claims "logically hinge" on its assertion that (1) its officers were improperly removed in the December 2022 recall vote; and (2) that Smith and Engelbrecht were improperly elected as officers of TAPA. Plaintiff's Complaint at ¶¶ 13–17; *see also* Decl. of Michael Mendez at ¶ 17; Exh. 5 to Decl. of Michael Mendez; ECF 12, at 1–2. These are inherently federal questions. *Davis v. UAW*, 392 F.3d 834, 839 (6th Cir. 2004) (finding pre-emption under the LMRDA when the plaintiff's state law claims "logically hinge on his assertion that he was lawfully elected."). Plaintiff's state law claims "really and substantially involve a dispute or

controversy respecting the validity, construction or effect of [federal] law." *Dunlap*, 381 F.3d at 1290 (quoting *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982)).

The only way to adjudicate Plaintiff's state law claims would be to first adjudicate Plaintiff's claim that the December 2022 recall election was "fraudulent," a claim only the Secretary of Labor can bring in federal court. 29 U.S.C. §§ 482(b), & 483; *see also Porch-Clark*, 930 F. Supp. 2d at 935 (citing *Pettaway v. Hous. Fed'n of Teachers, Local 2415*, 2007 WL 951564, at *3 (S.D. Tex. Mar. 27, 2007)). Absent an action by the Secretary of Labor under the LMRDA, the December 2022 recall election is "presumed valid." 29 U.S.C. § 482(a)(2).

Finally, Plaintiff fundamentally misunderstands how pre-emption works. It argues that "there is no 'extraordinary pre-emptive force' within the Florida Statutes used to construct Plaintiff's State of Florida claims." ECF 12, at 4. Plaintiff further confuses the issue by claiming that "Tortious Interference and Theft can never be characterized as being 'occupied by a field of a federal cause of action' or 'wholly displacing' a State of Florida claim." *Id.* The issue here is that Plaintiff's state law claims assume, that the December 2022 union election was improper. Thus (in Plaintiff's mind) it is entitled to the union dues collected by 21 Air from 21 Air pilots, and it is entitled to be the recognized bargaining representative of the pilots of 21 Air, not the "imposter organization" i.e. Engelbrecht and Smith who (again in Plaintiff's mind) are "impersonating" TAPA officers. Plaintiff's claims fall squarely within the Secretary of Labor's exclusive cause of action to challenge union elections "already conducted" and the Court has subject matter jurisdiction under the complete pre-emption doctrine.

## IV. CONCLUSION

For the reasons stated here, the Court has subject matter jurisdiction over Plaintiff's Complaint, and the Court should deny Plaintiff's Motion to Remand.

**DATED** this 8th day of November 2024

Respectfully submitted,

*/s/ Patrick F. Martin*
Patrick F. Martin
Florida Bar No. 998729
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
9130 S. Dadeland Blvd.
Suite 1625
Miami, Florida 33156
Telephone: 305.374.0506
Facsimile: 305.374.0456
pfmartin@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANTS**
**21 AIR, LLC; MICHAEL MENDEZ; AND**
**OLGA GUERRA**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 8th day of November, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide notice to the following:

Michael R. Anello, Esq.
11565 17th Lane N, Unit 1607
St. Petersburg, FL. 33717
Telephone: 727.465.6080
MikeAnelloSting12@gmail.com
*Counsel for Plaintiff 21 Air Pilots Association, Inc.*

*/s/ Patrick F. Martin*
Patrick F. Martin
*Counsel for Defendants 21 Air, LLC; Michael Mendez; and Olga Guerra*